UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————

US COURT HOUSE SDNY FEDERAL CREDIT UNION,
on behalf of itself and its members, and                    Civil Action No.
THE FINEST FEDERAL CREDIT UNION,

              *Plaintiffs*,

vs.

FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC. and
FISERV, INC.

              *Defendants*.

—————————————————————————

### <u>ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Charles J. Nerko
Kevin D. Szczepanski
Benjamin Wilkinson
Sarah A. O'Brien
BARCLAY DAMON LLP
1270 Avenue of the Americas, Suite 501
New York, NY 10020
212.784.5800
cnerko@barclaydamon.com
kszczepanski@barclaydamon.com
bwilkinson@barclaydamon.com
sobrien@barclaydamon.com

*Attorneys for Plaintiffs*
*US Court House SDNY Federal Credit Union,*
  *on behalf of itself and its members,*
     *and*
*The Finest Federal Credit Union*

# TABLE OF CONTENTS

Nature of Action…………………………………………………………………………...1

Parties …………………………………………………………………………………...3

Jurisdiction & Venue……………………………………………………………………3

Factual Background………………………………………………………………………4

    Fiserv Deceives SDNY Court FCU by Misrepresenting Its Security Practices……………5

    Fiserv's History of Failing to Protect Confidential Financial Records…………………….6

    Fiserv's Many Security Problems Impact The "Virtual Branch" Online
    Banking System……………………………………………………………………10

    Despite Fiserv's Actual Knowledge of Problems with Virtual Branch
    Security, The System Has Remained Insecure and Jeopardized SDNY Court FCU's
    Members……………………………………………………………………………...13

    SDNY Court FCU's Member Information Is Very Valuable on the
    Black Market………………………………………………………………………..14

    Fiserv Attempts to Charge Punitive Early Termination and Other Fees When
    SDNY Court FCU Seeks to Exit The Insecure Virtual Branch Platform………………..17

    Punitive Damages Are Necessary for Complete Redress………………………………18

Claims for Relief…………………………………………………………………………21

    First Claim for Relief        Breach of Contract / Promissory Estoppel: Fiserv
                                     Solutions' Master Agreement……………………………21

    Second Claim for Relief       Breach of Contract / Promissory Estoppel: Fiserv's
                                     Privacy Notice……………………………………………23

    Third Claim for Relief        Misappropriation of Trade Secrets…………………………25

    Fourth Claim for Relief       Defend Trade Secrets Act…………………………………27

    Fifth Claim for Relief         Negligence / Gross Negligence……………………………28

    Sixth Claim for Relief        Fraud / Fraudulent Inducement……………………………30

Seventh Claim for Relief          Bailment……………………………………………………33

Eighth Claim for Relief           Conversion……………………………………………34

Ninth Claim for Relief            Tortious Interference with Prospective Economic
                                  Advantage…...……………………………………………35

Tenth Claim for Relief            Unjust Enrichment…………………………………………35

Eleventh Claim for Relief         Declaratory Relief…………………………………………..36

Twelfth Claim for Relief          Rescission of Master Agreement…………………………38

Thirteenth Claim for Relief       Injunction…………………………………………………...39

Jury Trial Demand……………………………………………………………………………………39

Demand for Relief……………………………………………………………………………………..39

Plaintiffs US Court House SDNY Federal Credit Union ("SDNY Court FCU"), on behalf of itself and its members, and The Finest Federal Credit Union ("The Finest FCU") by and through their undersigned counsel, Barclay Damon LLP, for its Complaint against Defendant Fiserv Solutions, LLC f/k/a Fiserv Solutions, Inc. ("Fiserv Solutions") and Fiserv, Inc. (collectively, "Fiserv") states as follows:

## NATURE OF ACTION

1.     This action arises from Fiserv's failure while serving as SDNY Court FCU's technology vendor to safeguard extraordinarily sensitive financial information of federal judges, U.S. attorneys, U.S. marshals, other federal law enforcement agents, Court personnel, and others who bank at SDNY Court FCU.  The information that Fiserv jeopardized—like judges' home addresses  and the locations where their debit cards are used—is highly prized by those seeking to stalk, harass, intimidate, and harm judicial personnel.

2.     After being terminated as SDNY Court FCU's vendor, Fiserv has refused to participate in information security audits required by its agreement and federal regulations that would allow SDNY Court FCU to identify which of its members were victimized by identity theft. Moreover, Fiserv has not yet dispossessed itself of SDNY Court FCU's member information or removed it from the internet. Meanwhile, Fiserv has sought punitive early termination and deconversion fees from SDNY Court FCU for exiting the insecure Fiserv system.  SDNY Court FCU brings this action on behalf of itself and its members to protect their highly sensitive personal information.

3.     While Fiserv claims expertise in providing technology solutions to financial institutions and asserts that it takes privacy and confidentiality very seriously, the facts show

1

otherwise.  The "Virtual Branch" online banking system that Fiserv sold to SDNY Court FCU has been plagued with security problems for several years.

4.     Even after Fiserv was sued by one of its other financial institution customers in 2018 for not implementing proper security controls on the Virtual Branch online banking system, that system has remained insecure.   Meanwhile, Fiserv is suing that other credit union customer who reported Virtual Branch security problems to Fiserv, after Fiserv demanded that its other customer not warn other Fiserv customers (like SDNY Court FCU) of the security problem.  To Fiserv, it was more important to keep its security problems under wraps than to invest in fixing security holes that potentially threatened scores of financial institutions and customers.

5.     According to *The Wall Street Journal*, Fiserv's misconduct is a part of a pattern of victimizing small financial institutions and the consumers they serve.  After decades of acquiring other technology providers, Fiserv now dominates the market.  Fiserv's strategy is to buy up its smaller competitors to stymie competition.  Meanwhile, Fiserv ceases to make the proper financial investments to keep up with emerging technology and security risks—while attempting to lock financial institutions into long-term contracts, attempting to intimidate and silence its customers from disclosing to other affected customers when there are security problems, and holding customers' data hostage when those customers seek to go to competitors.  This gambit has fattened Fiserv's profits but exploited smaller financial institutions and the customers they serve.  While midsize and local banks hold 13% of primary banking relationships, they capture only 7% of the customers who switch banks.  *See* "Frustrated by the Tech Industry, Small Banks Start to Rebel," *The Wall Street Journal*, April 11, 2019, https://www.wsj.com/articles/small-banks-rebel-against-the-most-important-tech-firms-you-have-never-heard-of-11554975000?st=i1dhmvc9sudbz3r&reflink=desktopwebshare_permalink.

6.     SDNY Court FCU is in the process of merging with The Finest Federal Credit Union.  The Finest Federal Credit Union also seeks relief for harms Fiserv has inflicted on it.

## PARTIES

7.     Plaintiff US Court House Federal Credit Union is a federally chartered, not-for-profit credit union with localized operations in the Southern District of New York. SDNY Court FCU maintains a single branch location and a principal place of business at the Thurgood Marshall United States Courthouse, 40 Foley Square, Room 507, New York, New York 10007.

8.     SDNY Court FCU seeks relief on its own behalf, as well as on behalf of its individual members under the associational standing doctrine.  SDNY Court FCU's members would otherwise have standing to sue in their own right, the interests SDNY Court FCU seeks to protect are germane to the credit union's purpose, and neither the associational claims nor the requested associational relief requires the participation of the credit union's individual members.

9.     Plaintiff The Finest Federal Credit Union is a federally chartered, not-for-profit credit union with localized operations in New York City. The Finest FCU maintains a single branch location and a principal place of business at 215 Park Row, Suite 2, New York, New York 10038.

10.     Defendant Fiserv Solutions, LLC was formerly known as Fiserv Solutions, Inc. and is a limited liability corporation organized under the laws of Wisconsin, with a principal place of business located at 255 Fiserv Drive, Brookfield, Wisconsin 53008.

11.     Defendant Fiserv, Inc. is a corporation organized under the laws of the State of Wisconsin with a principal place of business at 255 Fiserv Drive, Brookfield, Wisconsin 53008.

## JURISDICTION & VENUE

12.     This Court has subject matter jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity).

13.     Venue in the Southern District of New York is proper because a substantial part of the events or omission giving rise to the claim occurred in this district, and a substantial part of property that is subject of the action is situated in this district.

14.     This Court has personal jurisdiction over Fiserv because Fiserv operates in this district and/or has contacts with this jurisdiction sufficient to subject it to personal jurisdiction.

## FACTUAL BACKGROUND

15.     Founded in 1949, SDNY Court FCU is a not-for-profit financial institution serving federal judges, U.S. attorneys, U.S. marshals, other federal law enforcement agents, and Court personnel of the Southern District of New York.  As a credit union, SDNY Court FCU is structured as a not-for-profit cooperative owned by individual consumers, who pool their resources to provide credit to one another.

16.     Founded in 2015, The Finest Federal Credit Union is a not-for-profit financial institution planning to merge with SDNY Court FCU.

17.     Founded in 1984, Fiserv is one of the world's largest providers of technology solutions to credit unions, banks, and other financial services providers.  According to Fiserv's website, it has approximately 10,000 financial institution clients, and provides technology to more than one in three financial institutions in the United States. *See* https://www.fiserv.com/en/who-we-serve/bank.html.  More than $30 Billion of transactions each day move through Fiserv's systems. *See* https://www.fiserv.com/en/solutions/data-aggregation.html?rdf=/alldata&rdc=2022-10-19&rdr=2023-10-19.

18.     Fiserv has provided account processing services for SDNY Court FCU.  An account processing system is the "brains" behind a financial institution, processing and recording all

transactions for the financial institution.  For example, Fiserv provided technology to power tellers'' computers and maintain SDNY Court FCU's account records.

19.     Fiserv also hosted SDNY Court FCU's online banking system, which is called "Virtual Branch."  Fiserv processed members' transactions originating from that website.  Once a person accessed Virtual Branch, they could engage in transactions affecting a SDNY Court FCU account, including transferring funds in and out of the account.

20.     Fiserv acknowledges in its publicly posted Code of Conduct & Business Ethics that "[i]t is our responsibility to safeguard confidential information when it is collected, used, transmitted and stored to prevent any unauthorized disclosure."  See https://investors.fiserv.com/static-files/2cef514b-b67b-45c7-9aaa-70ccedbdb25c

***Fiserv Deceives SDNY Court FCU by Misrepresenting Its Security Practices***

21.     SDNY Court FCU and Fiserv Solutions entered into a "master agreement" (the "**Master Agreement**") for technology services.  **Exhibit 1** is a true and correct copy of the Master Agreement.

22.     Among the misrepresentations made by Fiserv to induce SDNY Court FCU to enter into the Master Agreement was that Fiserv would provide adequate security for its member information stored in "Virtual Branch," hosted by Fiserv Solutions, which was to become SDNY Court FCU's online banking website.

23.     As set forth in greater detail below, Fiserv's representations concerning the adequacy of its authentication process for its Virtual Branch online banking website were false.  In reality, Fiserv employed a deficient authentication process with lax security controls that put SDNY Court FCU's member information at profound risk of hacking.

24.     Fiserv recognized its affirmative obligation to provide services that continuously comply with applicable law and not harm consumers.   As Fiserv explained: "[a]ll Fiserv associates have an affirmative obligation to design, deliver and support our products and services in a manner that continuously complies with applicable laws and regulations....Because the principal market for our products and services is the regulated financial services industry, the consequences of non-compliant offerings could seriously damage our reputation and financial interests.  Fiserv should use all reasonable measures to avoid consumer harm, to assist our clients in avoiding consumer harm and in diligently investigating any claims by our clients or others that our products or services are harming consumers or failing to comply with federal consumer financial laws." See https://investors.fiserv.com/static-files/2cef514b-b67b-45c7-9aaa-70ccedbdb25c.

25.     Fiserv has not performed in accordance with the Master Agreement, has breached the express and implied terms of the Master Agreement, and has engaged in other misconduct that has harmed SDNY Court FCU, its members, and The Finest FCU.

### *Fiserv's History of Failing to Protect Confidential Financial Records*

26.     In February 2019, security analyst SecurityScorecard, Inc. rated Fiserv a "C" on its A to F scale.  **Exhibit 2** is a true and correct copy of SecurityScorecard's analysis of Fiserv.

27.     According to SecurityScorecard, Inc., a company rated below a "B" is 5.4 times more likely to suffer a consequential breach than a company with proper security practices.

28.     In the course of conducting a security review of Fiserv, SecurityScorecard, Inc. uncovered over 40 weaknesses in Fiserv's security, including the following:

      a.   Fiserv fails to promptly update and patch affected systems to protect against commonly known security vulnerabilities and exposures, including delaying remediation of high-severity vulnerabilities for more than 30 days after publication.

b.  Fiserv employs products and services past their end-of-life or end-of-service deadlines. As these products and services are no longer marketed, sold, or upgraded by the manufacturers, they are more likely to be exploited and to have unpatched security vulnerabilities.

c.  In March 2018, Fiserv was observed engaging in communications indicative of a malware infection.

d.  In June 2018, Fiserv was observed engaging in communications indicative of yet another malware infection.

e.  Fiserv runs servers using an obsolete Secure Shell (SSH) network protocol that contains fundamental weaknesses that can be readily exploited by hackers, including a design flaw that allows a man-in-the-middle attack.

f.  Fiserv employs weak ciphers and encryption certificates that are expired, are self-signed, and have weak signatures.

g.  Fiserv's web applications do not implement X-XSS-Protection best practices, meaning that hackers can send malicious URLs that inject code into Fiserv-hosted websites.

h.  Fiserv's web applications do not implement X-Content-Type-Options Best Practices, which could lead to security issues and the execution of malicious code.

i.  Fiserv's websites do not implement HSTS best practices, which render Fiserv-hosted sites vulnerable to a man-in-the-middle attack that can divert users to malicious websites.

j.  Fiserv's websites do not enforce HTTPS encryption, leaving users vulnerable to man-in-the-middle attackers who can falsify data and inject malicious code.

k.  Fiserv's websites redirect users to a new URL in a way that cannot be secured with HTTPS and HSTS headers, leaving users vulnerable to being redirected to spoofed or malicious versions of the sites.

l.  When a user is redirected to his or her ultimate URL destination, the user passes through one or more URLs served over HTTP (instead of HTTPS), which weakens other security technologies (such as HTTPS and HSTS headers) that are deployed elsewhere.

m.  Fiserv does not implement X-Frame-Options best practices, which allows other, untrusted websites to embed a Fiserv-hosted website in a frame on their page. This can be used to make social-engineering attacks appear more legitimate, or it can be used for clickjacking attacks.

29.  Fiserv has been repeatedly put on notice that its security measures are deficient, leaving SDNY Court FCU member information at risk. Rather than addressing the problems by updating its security, Fiserv continued to use outdated security methods long after vulnerabilities were brought to Fiserv's attention. This left SDNY Court FCU, its members, Fiserv's other customers, and those customers' own customers at risk.

30.  Even three years after 2019 SecurityScorecard report, Fiserv still has not fixed all of its security problems. Fiserv's current SecurityScorecard rating of 84 out of 100 possible points is surprising given the extraordinarily sensitive information stored by Fiserv and indicates that Fiserv still harbors security deficiencies that makes Fiserv *2.6 times more likely to suffer a breach* than companies having proper security practices. *See* https://securityscorecard.com/security-rating/fiserv.com (Fiserv security rating is 84/100 or a B);

https://securityscorecard.pathfactory.com/c/securityscorecard-sc?x=VO3MOH at 31 (companies

with only a "B" security rating like Fiserv are 2.6 times more likely to be breached).

31.     Separately, in August 2018, *Krebs on Security* reported that a customer of a small

financial institution discovered a security problem with Fiserv that permitted unauthorized

individuals to see customers' account and transactional records, and to add or delete phone

numbers and email addresses used to receive alerts about account transactions. *See* "Fiserv Flaw

Exposed Customer Data at Hundreds of Banks," https://krebsonsecurity.com/2018/08/fiserv-flaw-

exposed-customer-data-at-hundreds-of-banks/.

32.     According to this article, the customer contacted Fiserv through multiple outlets,

including messages sent to the social media accounts of various individuals who were identified

as affiliated with Fiserv.  Fiserv, however, failed to fix this known security vulnerability in

response to these consumer complaints.

33.     Fiserv spokesperson Ann Cave confirmed that Fiserv did not make efforts to

remediate this known threat until ***after*** receiving an inquiry from a ***reporter***—when negative press

coverage was imminent.  According to Ms. Cave, "After receiving [the reporter's] email, [Fiserv]

promptly engaged appropriate resources and worked around the clock to research and remediate

the situation. [Fiserv] developed a security patch within 24 hours of receiving notification and

deployed the patch to clients that utilize a hosted version of the solution. [Fiserv] will be deploying

the patch this evening to clients that utilize an in-house version of the solution."  Thus, only after

Fiserv faced the imminent prospect of negative press attention did Fiserv "promptly engage[]

appropriate resources" to fix its security lapse.

34.     According to this press report, customer information at hundreds of financial

institutions remained vulnerable to this security lapse.

35.     Unfortunately, Fiserv's corporate culture discouraged emphasis on data security. For example, even one of Fiserv's own employees recognized the inadequacy of Fiserv's support and outreach channels. In a post responding to the *Krebs on Security* article, Adam Kinder, Fiserv's Information Security Manager, invited customers to message him through his personal social media account[1] so that he "can use what influence [and] means I have at our company, above and beyond customer support and outreach branches, to address their concerns."

**Fiserv's Many Security Problems Impact The "Virtual Branch" Online Banking System**

36.     SDNY Court FCU's online banking system is provided by Fiserv and called "Virtual Branch."  Virtual Branch has a sordid history of multiple security problems.

37.     Upon information and belief, at or around 2018, all that Fiserv required to register for an online banking account with SDNY Court FCU was an account number and the last four digits of the member's Social Security number. Given the weak security controls Fiserv had implemented on SDNY Court FCU's online banking system, an unauthorized individual can access a member's online banking account by obtaining the member's account number (such as from the face of a check or guessing an account number based upon the sequence used to assign account numbers), and then either knowing or guessing the last four digits of a member's Social Security number.

38.     Fiserv had actual knowledge that the security controls it placed on SDNY Court FCU's online banking website were inadequate.  Indeed, Fiserv's own website notes that that using

[1] Fiserv's Code of Conduct & Business Ethics contains a social media policy that covers the use of LinkedIn, Twitter, Facebook, forums, and blogs, and Fiserv regulates its employees' use of Fiserv's trademarks on social media.  Fiserv notes that social media "is an established part of many people's personal and professional lives-and the lines have blurred."  *See* https://investors.fiserv.com/static-files/2cef514b-b67b-45c7-9aaa-70ccedbdb25c.  Accordingly, Fiserv knows, or should have known, about communications sent to the social media accounts of its agents who have identified themselves as Fiserv representatives on social media platforms.

the last four digits of a Social Security number is insufficient to authenticate an authorized user of

an online banking account because fraudsters already have that information:

> Fraudsters look for ways to take over customers' and members' accounts, often with online banking credentials.... Any vulnerabilities in the account-opening process will likely be tested.... **If I call my bank to reset my password, and they ask** my mother's maiden name or **last four digits of my Social Security number, that's not enough...** Fraudsters already have that information.

*See*     https://www.fiserv.com/en/about-fiserv/the-point/managing-p2p-payment-risk-real-time-environment.html (emphasis added).

39.     Even if fraudsters did not already know the last four digits of a member's Social

Security number, Fiserv admitted in past litigation involving Virtual Branch security failures that

it did not impose rate limiting.  In other words, there was no "lockout" enforced by Fiserv's online

banking system to stop unauthorized individuals from using a pure trial-and-error guessing process

(which can easily be automated) to guess the last four digits of a member's Social Security number

and gain access to SDNY Court FCU's online banking accounts.  As a consequence, an

unauthorized individual could take over an online banking account merely by guesswork, or

cycling through "0001" to "9999."

40.     It would be expected that a company as sophisticated as Fiserv would implement

appropriate controls to safeguard SDNY Court FCU's online banking accounts against

unauthorized access through trial-and-error, "guessing" or other reasonably foreseeable attacks.

With respect to SDNY Court FCU's online banking website, Fiserv failed to implement reasonable

security controls such as those that:

     a.     require the use of an authentication procedure with sufficient complexity and

          secrecy;

b.    implement a rate-limiting mechanism to effectively limit the number of failed authentication attempts that can be made on an online banking account;

c.    require an individual to complete a "captcha" (a simple puzzle used to thwart automated access attempts);

d.    impose an adequate waiting or lockout period following a failed login attempt; and

e.    leverage other risk-based or adaptive authentication techniques to identify user behavior that falls outside typical norms, including repetitive, highly anomalous behavior consistent with a "guessing" or trial-and-error method to gain access to SDNY Court FCU's online banking website.

41.    Fiserv concedes that it may not be able to protect its customers' records from future data breaches in its most recent SEC Form 10-K dated February 23, 2022:

> ***We expect that unauthorized parties will continue to attempt to gain access to our systems*** …. Although we believe that we maintain a robust program of information security and controls and that none of the events that we have encountered to date have materially impacted us, ***we cannot be certain that the security measures and procedures we have in place*** to detect security incidents and protect sensitive data, including protection against unauthorized access and use by our employees, ***will be successful or sufficient*** to counter all current and emerging technological risks and threats.  (emphasis added)

42.    Fiserv strives to keep its security failures under wraps by misleading its customers into continuing to entrust their confidential information with Fiserv while maintaining a high stock price, artificially inflating the value of its corporate goodwill, and continuing to receive payments from financial institutions.

43.    Indeed, Fiserv even sued one of its former customers—another not-for-profit credit union, Bessemer System Federal Credit Union, in an effort to try to keep the problems with Virtual

Brank secret, after that credit union rejected Fiserv's demand to not inform other Fiserv customers about the security problem.

44.     By intentionally failing to disclose or suppressing information about its security problems, Fiserv misled SDNY Court FCU, its members, and other Fiserv customers into using and continuing to use Fiserv's service offerings, thus providing Fiserv with ill-gotten gains, thwarting its competitors, and artificially fattening its stock price and goodwill.  Fiserv has a particular interest in artificially increasing the value of its goodwill and intangible assets, as they represent a significant portion of Fiserv's total assets.

45.     As financial institutions, SDNY Court FCU and The Finest FCU have a continuing interest in ensuring that their members are secure and safeguarded from future breaches.

46.     Because SDNY Court FCU's core function is serving its members' financial needs, and many of its members who are judicial or law enforcement personnel at heightened risk of criminal acts, SDNY Court FCU is faced with increased costs of addressing Fiserv's poor security, and those risks will befall The Finest FCU when those members become The Finest FCU members.

### Despite Fiserv's Actual Knowledge of Problems with Virtual Branch Security, The System Has Remained Insecure and Jeopardized SDNY Court FCU's Members

47.     Fiserv was, and is, aware of the risks posed by its weak security controls and the extraordinarily sensitive nature of the personal member information it maintains, as well as the resulting impact that a data breach would have on a financial institution such as SDNY Court FCU and The Finest FCU.

48.     For example, to take over an SDNY Court FCU account prior to October 24, 2022, the only information Virtual Brach asked for authentication is an account number, a social security number, and a house number—nothing more.

49.     Under federal regulatory guidance, the Virtual Branch single-factor authentication process is woefully inadequate, particularly for the federal judges, law enforcement agents, and other members of SDNY Court FCU who are at an extraordinarily high risk of hacking and other criminal threats due to their government positions. *See* FFIEC, "Authentication and Access to Financial Institutions services and Systems" at 6-7, https://www.fdic.gov/news/financial-institution-letters/2021/fil21055a.pdf ("Attacks against systems and users protected with single-factor authentication often lead to unauthorized access resulting in data theft or destruction, adverse impacts from ransomware, customer account fraud, and identity theft.  Accordingly, use of single factor authentication as the only control mechanism has shown to be inadequate against these threats.  Furthermore, single-factor authentication with layered security has shown to be inadequate for customers engaged in high-risk transactions and for high-risk users.").

50.     Unfortunately, Fiserv's approach to maintaining the privacy and security of its customer data was knowingly deficient, grossly negligent and reckless, or, at the very least, negligent.  Fiserv failed to follow industry standard precautions in response to known risks, and Fiserv knew that its security controls were substandard and deficient.

51.     Fiserv claimed to shut down new Virtual Branch enrollments for SDNY Court FCU as of October 24, 2022.

52.     SDNY Court FCU now faces increased costs for surveillance and increased vigilance against fraudulent activity involving its members.

### SDNY Court FCU's Member Information Is Very Valuable on the Black Market

53.     The types of information Fiserv maintained for SDNY Court FCU are highly valuable to identity thieves.  The names, email addresses, recovery email accounts, telephone numbers, birthdates, passwords, security question answers, and other valuable member

information of federal judges, marshals and other court personnel can all be used to gain access to a variety of existing accounts and websites, as well as to commit criminal acts in person.

54.     Identity thieves can also use SDNY Court FCU's member information for embarrassment, blackmail, or harassment in person or online, or to commit other types of fraud, including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits.  For example, the times and locations government employees use their debit cards can be used to stalk and victimize those individuals.  A report from the United States Government Task Force on Identity Theft explains the harm befallen to SDNY Court FCU and its members:

> Businesses suffer most of the direct losses from ... identity theft because individual victims generally are not held responsible for fraudulent charges. Individual victims, however, also collectively spend billions of dollars recovering from the effects of the crime.

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, monetary costs of identity theft include indirect costs to businesses for fraud prevention and mitigation of the harm once it has occurred (e.g., for mailing notices to consumers and upgrading systems). Similarly, individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit....

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.[2]

---

[2] The President's Identity Theft Task Force, Combating Identity Theft: A Strategic Plan, Federal Trade Commission, 11 (April 2007).

55.     To put it into context, the 2013 Norton Report, based on one of the largest consumer cybercrime studies ever conducted, estimated that the global price tag of cybercrime was around $113 billion at that time, with an average cost per victim of $298.

56.     Once stolen, member information can be used in a number of different ways.  One of the most common is that it is offered for sale on the "dark web," a heavily encrypted part of the internet that makes it difficult for authorities to detect a website's location or owners. The dark web is not indexed by normal search engines such as Google and is accessible only by using a Tor browser (or similar tool), which aims to conceal users' identities and online activity. The dark web is notorious for hosting marketplaces selling items such as weapons, drugs, and member information. Sites on the dark web appear and disappear quickly, providing cover for illegal transactions.

57.     Once someone buys member information, it is then used to gain access to different areas of the victim's digital life, including financial accounts, social media, and credit card details. During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

58.     In addition to member information that can be accessed, a hacked online banking account can be very valuable to cyber criminals for other attacks.  Since online banking accounts are linked to other accounts (for example, to transfer funds between financial institutions), a hacked online banking account can serve as a springboard for a hacker that opens up a number of other accounts.

59.     The problems associated with identity theft are exacerbated by the fact that many identity thieves will wait years before attempting to use the member information they have

obtained.  Indeed, in order to protect its member information, SDNY Court FCU will need to remain vigilant against unauthorized use of its member information for years and decades to come.

### *Fiserv Attempts to Charge Punitive Early Termination and Other Fees When SDNY Court FCU Seeks to Exit The Insecure Virtual Branch Platform*

60.     On or about October 6, 2022, counsel for SDNY Court FCU wrote to Fiserv advising that Fiserv was in breach of the Master Agreement by, among other things, failing to maintain an information security program that protected the security and confidentiality of SDNY Court FCU's member information, terminating the Agreement, and requesting security audit records. *See* **Exhibit 3.**

61.     Counsel for Fiserv responded by letter dated October 10, 2022 disputing Fiserv's breach and instead demanding that SDNY Court FCU pay unreasonable and unwarranted "deconversion and early termination fees," which are in excess of $200,000. *See* **Exhibit 4**.

62.     Counsel for SDNY Court FCU responded by letter dated October 12, 2022, clarifying again that Fiserv had been terminated by SDNY and requesting that Fiserv immediately return and remove from the internet SDNY Court FCU's highly sensitive information, information pertaining to federal judges, U.S. attorneys, U.S. marshals, other federal law enforcement agents and Court personnel. *See* **Exhibit 5.**

63.     In letter correspondence dated October 14, 2022, counsel for Fiserv advised that it intends to charge SDNY Court FCU for purported "services" required to furnish all client information as well as levy "early termination fees." *See* **Exhibit 6.**

64.     Counsel for SDNY Court FCU responded via letter dated October 18, 2022 notifying Fiserv that its purported proposal is insufficient because: (a) it does not address the regulatory need for SDNY Court FCU to obtain security audit records from Fiserv; and (b) Fiserv cannot disclaim liability for harming SDNY Court FCU by causing it to implement its disaster

recovery arrangements. The October 18, 2022 correspondence further explained that there is no basis for Fiserv to seek fees under these circumstances because SDNY Court FCU's termination of Fiserv and resort to its disaster recovery plan is the direct result of Fiserv's breaches of its confidentiality and audit obligations under the Agreement, as well as Fiserv's failure to provide the statutorily required certified-mail notice to SDNY Court FCU so that it had sufficient time to find suitable alternative arrangements before having the Master Agreement ostensibly auto-renew. *See* **Exhibit 7.**

65.     While Fiserv has subsequently claimed to disable new Virtual Branch enrollments for SDNY Court FCU, Fiserv has not otherwise complied with SDNY Court FCU's demands— including that Fiserv return SDNY Court FCU's records in a usable form, that Fiserv refrain from possessing those records, and that Fiserv provide audits that would permit SDNY Court FCU to identify any members whose information was placed at risk of compromise.

### *Punitive Damages Are Necessary for Complete Redress*

66.     Fiserv has repeatedly acted in bad faith and deceptively.

67.     As alleged above, Fiserv knew its data security measures were grossly inadequate by, at the absolute latest, reports of security problems coming to light, exposing Fiserv's lax and inadequate approach to data security.  At that time, Fiserv was on notice that its systems were extremely vulnerable to attack—facts Fiserv already knew given its previous exposures and problems.

68.     In response to all of these facts, Fiserv failed to properly warn SDNY Court FCU, its members, and The Finest FCU about these problems and, instead, openly represented that Fiserv had adequate security practices and protocols.

18

69.     Fiserv had an obligation to disclose to SDNY Court FCU, its members, and The Finest FCU that its members were easy targets for hackers and that Fiserv was not implementing appropriate measures to protect them and the safety of their information.

70.     Fiserv did not do these things.  Instead, Fiserv willfully deceived SDNY Court FCU, its members, and The Finest FCU by concealing the true facts concerning Fiserv's data security, which Fiserv was obligated to, and had a duty to, disclose.  Fiserv made numerous representations following the prior data security vulnerabilities to assure its customers that their member information and other data was safe, and that Fiserv was dedicated to maintaining that security.

71.     Had Fiserv disclosed the true facts about its poor data security practices, SDNY Court FCU and The Finest FCU would have taken measures to protect themselves.  SDNY Court FCU and The Finest FCU justifiably relied on Fiserv to provide accurate and complete information about its data security and processing of SDNY Court FCU's member information, and Fiserv did not do so.

72.     Alternatively, given the security lapses and other problems in Fiserv's services and Fiserv's refusal to take measures to detect them, much less fix them, Fiserv simply should have shut down the services SDNY Court FCU was using and returned SDNY Court FCU member information so that SDNY Court FCU could transition to its disaster recovery arrangements. Independent of any representations made by Fiserv, SDNY Court FCU justifiably relied on Fiserv to provide a service with at least minimally adequate measures to protect the confidentiality of SDNY Court FCU's member information, and SDNY Court FCU justifiably relied on Fiserv to disclose facts that would undermine that reliance.

73.     Rather than ceasing to offer a clearly unsafe and defective service or disclosing to SDNY Court FCU that its services were unsafe and that member information was exposed to theft on a grand scale, Fiserv continued to conceal information relating to the inadequacy of its security and service offerings, including by threatening at least one other financial institution customer with litigation in an effort to pressure that customer to cover up and not inform other affected customers of Virtual Branch security problems.

74.     Even though Fiserv had knowledge that its system was, insecure, Fiserv has failed to properly address these issues, including by failing to put SDNY Court FCU, its members, and The Finest FCU on notice of them.

75.     Fiserv acted in a wanton and reckless manner, maliciously, with a high degree of immorality, and in a manner showing such wanton dishonesty as to imply a criminal indifference to civil obligations.

76.     The damages inflicted on SDNY Court FCU, its members, and The Finest FCU include paying Fiserv for services that were not properly performed, damage to SDNY Court FCU's business, being placed at an imminent, immediate, and continuing increased risk of being victimized by identity theft and fraud, and time and effort needed to mitigate the adverse actual and potential impact of Fiserv's acts, omissions, concealments, and misrepresentations, including providing increased security against and investigating fraudulent or inaccurate transactions, notification of affected members, increased costs associated with the activation of SDNY Court FCU's disaster recovery plan, cancelling and/or reissuing payment cards or payment card transactions, imposing withdrawal and transactional limits on accounts, and losing interest revenue and fees due to reduced account usage.  Furthermore, plaintiffs are entitled to disgorge the unjust

profits and ill-gotten gains Fiserv made in connection with the improper use of and failure to safeguard SDNY Court FCU's account records and member information.

## FIRST CLAIM FOR RELIEF
**Breach of Contract / Promissory Estoppel: Fiserv Solutions' Master Agreement**
**(By SDNY Court FCU Against Fiserv Solutions Only)**

77.     Plaintiffs repeat the allegations in the preceding paragraphs.

78.     The Master Agreement sets forth valid and binding obligations upon Fiserv Solutions.  Alternatively, to the extent the Master Agreement is not a valid or enforceable contract, it is enforceable under principles of promissory estoppel because the promises contained in the Master Agreement were reasonably relied SDNY Court FCU and its members to their detriment in deciding whether to transact business with Fiserv Solutions and furnish sensitive their sensitive personal and banking information to Fiserv Solutions.

79.     In addition to the express terms of the Master Agreement, the implied covenant of good faith and fair dealing applies to the Master Agreement.  When reasonably read, the terms of the Master Agreement imply certain other obligations that are necessary to vindicate the parties' apparent intentions and reasonable expectations.  By entering into the Master Agreement, Fiserv Solutions impliedly covenanted that it would act in good faith, including by providing services suitable for the proper functioning of a federally regulated credit union.

80.     SDNY Court FCU has duly performed all obligations and satisfied all conditions required of it under the Master Agreement, except for those that were waived or excused by Fiserv Solutions.

81.     Fiserv Solutions has materially breached its obligations under its contracts with SDNY Court FCU by failing to perform as required, repudiating its obligations, and breaching the implied covenant of good faith and fair dealing by, among other things:

21

a.   Fiserv Solutions breached Section 4(a) of the Master Agreement, which required Fiserv Solutions to implement and maintain an information security program that, among other things, protected the security and confidentiality of SDNY Court FCU's member information.  Among other things, Fiserv Solutions placed SDNY Court FCU's member information—including financial information pertaining to federal judges and other Court personnel—on the insecure Virtual Branch website without proper authentication and security controls.

b.   Fiserv Solutions breached Section 6(a) of the Master Agreement, under which Fiserv Solutions warranted that "it will comply with all regulatory requirements applicable to Fiserv's operations used in the performance of its obligations under this Agreement."  Fiserv did not comply with all such requirements.

c.   Fiserv Solutions breached the service warranties in Section 4(e) of the ASP Services Exhibit to the Master Agreement, including the warranties of conformity to specifications, accuracy, due care, and legal compliance.

d.   Fiserv improperly withheld and sought unconscionably punitive fees for copies of SDNY Court FCU records despite Section 3 of the Master Agreement, which provides that such records constitute "Client Information"; and the Federal Credit Union Act (12 U.S.C. §§ 1757(4), 1766)), which requires that "[a]ll books and records of Federal credit unions shall be kept" and limits a federal credit union's ability to dispose property only to circumstances in which such disposal is "necessary or incidental to [the credit union's] operations."

e.  Fiserv refused to provide audit records pertaining to its information security, in breach of Section 4(b) of the Master Agreement, and ASP Services Exhibit to the Master Agreement Sections 4(d) and (h).

f.  Fiserv Solutions has demonstrated a lack of good faith and fair dealing by refusing to promptly provide services for the suitable and proper protection of credit union members, and exposing SDNY Court FCU and its members to vastly greater harm than it had bargained for and well outside of commercially reasonable norms, and issuing invoices and payment demands to SDNY Court FCU that overstated the amount SDNY Court FCU owes and causing SDNY Court FCU to remit payments to Fiserv Solutions that are not justly due to Fiserv Solutions or supported by any good-faith basis.

82.  Fiserv Solutions' contract breaches were caused by bad faith and its willful, malicious, reckless, or grossly negligent conduct, were not reasonably contemplated by SDNY Court FCU, were so unreasonable as to constitute an abandonment of the Master Agreement, and were breaches of fundamental obligations.  Indeed, despite a pattern of recurring and known breaches, Fiserv Solutions was grossly negligent and reckless, failed to use a slight degree of care, and acted with complete disregard for SDNY Court FCU's rights.  Although Fiserv Solutions had actual knowledge that its system compromised the security of SDNY Court FCU's member information, Fiserv Solutions failed to address properly these security problems.

83.  As a result of Fiserv Solutions' contract breaches, SDNY Court FCU and its members have suffered and will continue to suffer damages and harm.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Breach of Contract / Promissory Estoppel: Fiserv's Privacy Notice**

84.  Plaintiffs repeat the allegations in the preceding paragraphs.

85.     Fiserv, Inc. utilizes a publicly available "Privacy Notice," which sets forth Fiserv's responsibilities with respect to the security and protection of its customer data. The Privacy Notice applies to Fiserv, Inc. and all of its subsidiaries and affiliates, including Fiserv Solutions.   A copy of the current Privacy Notice is available at https://www.fiserv.com/en/about-fiserv/privacy-notice.html.

86.     Section 6 of the Privacy Notice attests as follows:

> We have put in place appropriate security measures to prevent your personal data from being accidentally lost, used or accessed in an unauthorized way, altered or disclosed. In addition, we limit access to your personal data to those employees, agents, contractors and other third parties who have a business need to know. They will only process your personal data on our instruction and they are subject to a duty of confidentiality. We maintain annual compliance with global Payment Card Industry Data Security Standard (PCI DSS) adopted by the payment card brands for all companies that process, store or transmit cardholder data.  We have put in place procedures to deal with any suspected personal data breach and will notify you and any applicable regulator of a breach where we are legally required to do so.

87.     The Privacy Notice imposes valid and binding contractual obligations on Fiserv. Alternatively, to the extent the Privacy Notice is not a valid or enforceable contract, it is enforceable under principles of promissory estoppel because the promises contained in the Privacy Notice were reasonably relied upon by plaintiffs to their detriment.  SDNY Court FCU and its members relied on the Privacy Notice to their detriment in deciding whether to transact business with Fiserv and furnish sensitive their sensitive personal and banking information to Fiserv. Further, The Finest FCU reasonably relied on the Privacy Notice in deciding whether to pursue a merger with SDNY Court FCU and how to address the merger.

88.     Fiserv breached its obligations under the Privacy Notice and violated its promises to plaintiffs by failing to safeguard SDNY Court FCU's member information as promised.

89.     As a result of Fiserv's breaches of the Privacy Notice and violation of its promises, SDNY Court FCU and its members and The Finest FCU have suffered and will suffer damages and irreparable harm.

### THIRD CLAIM FOR RELIEF
### Misappropriation of Trade Secrets
### (By SDNY Court FCU Only)

90.     Plaintiffs repeat the allegations in the preceding paragraphs.

91.     SDNY Court FCU is the owner of all right, title, and interest in and to certain valuable trade secrets relating to its business operations.  SDNY Court FCU's trade secrets include, but are not limited to, the identities and contact information of its members, the compilation of members' financial history and transactions as reflected on account records and information, and credit information.

92.     Other than through unlawful acquisition, the trade secrets are not known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use.

93.     SDNY Court FCU has taken reasonable measures to maintain the secrecy of its trade secrets, including insisting that Fiserv protect their secrecy pursuant to the Master Agreement and the Fiserv Privacy Notice.

94.     SDNY Court FCU has invested substantial resources in developing and protecting its trade secrets.  SDNY Court FCU's trade secrets provide it with economic advantages over its competitors.

95.     Fiserv knew or should have known that the trade secrets at issue comprised SDNY Court FCU's trade secrets.

25

96.     Fiserv misappropriated SDNY Court FCU's trade secrets by acquiring them through improper means by misrepresenting to SDNY Court FCU the existence and nature of Fiserv's security controls. Had Fiserv provided truthful information to SDNY Court FCU, it would not have furnished its trade secrets to Fiserv and allowed, and continued to allow, those trade secrets to be stored and accessible on Fiserv's insecure Virtual Branch website.

97.     Fiserv has also misappropriated SDNY Court FCU's trade secrets by using them without its express or implied consent. Fiserv's improper use of SDNY Court FCU's trade secrets includes using them contrary to SDNY Court FCU's instructions and after being terminated as a vendor, such as by failing to return the trade secrets to SDNY Court FCU as directed and instead using them for Fiserv's own commercial advantage.

98.     Fiserv has also misappropriated SDNY Court FCU's trade secrets by allowing them to be disclosed without SDNY Court FCU's express or implied consent, including by making the trade secrets available to hackers and other individuals not authorized to acquire the trade secrets.

99.     At the time of Fiserv's use and disclosure of SDNY Court FCU's trade secrets, Fiserv knew or had reason to know that it acquired the trade secrets by improper means, under circumstances giving rise to a duty to maintain their secrecy or limit their use, from or through a person who had a duty to SDNY Court FCU to maintain the trade secrets' secrecy and limit their use, or by mistake prior to a material change of Fiserv's position.

100.    Fiserv's misappropriation of SDNY Court FCU's trade secrets was done for its own commercial advantage, including for the purposes of preventing SDNY Court FCU from using vendors that are competitive with Fiserv, pressuring SDNY Court FCU to merge with a credit union who was an existing Fiserv customer, and causing SDNY Court FCU to enter into

transactions that provided Fiserv with additional and excessive profits, and collecting amounts that were not justly due to Fiserv.

101.    Fiserv's misappropriation of SDNY Court FCU's trade secrets was carried out in a knowing, willful, reckless, and malicious manner in disregard and violation of SDNY Court FCU's rights.

102.    As a direct and proximate result of Fiserv's misappropriation of SDNY Court FCU's trade secrets, SDNY Court FCU and its members have suffered and will continue to suffer damages and harm.

**FOURTH CLAIM FOR RELIEF**
**Defend Trade Secrets Act**
**(By SDNY Court FCU Only)**

103.    Plaintiffs repeat the allegations in the preceding paragraphs.

104.    SDNY Court FCU's trade secrets are related to products and services used in and intended to be used in interstate and foreign commerce.

105.    Fiserv's acts constitute violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836.

106.    Fiserv's misappropriation was willful and malicious, entitling SDNY Court FCU to exemplary damages under 18 U.S.C. § 1836(b)(3)(C) and reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

107.    As a direct and proximate result of Fiserv's misappropriation of SDNY Court FCU's trade secrets, SDNY Court FCU and its members have suffered and will continue to suffer damages and harm.

## FIFTH CLAIM FOR RELIEF
### Negligence / Gross Negligence
### (By SDNY Court FCU Only)

108.    Plaintiffs repeat the allegations in the preceding paragraphs.

109.    Fiserv owed a duty to SDNY Court FCU because in affirmatively collecting, storing, and processing sensitive personal and financial information on internet-accessible computer systems, Fiserv owed a duty to SDNY Court FCU and its members to exercise reasonable care under the circumstances, which includes using reasonable measures to protect the information from the foreseeable risk of a data breach, unauthorized third-party access, or loss or alteration. Troves of highly sensitive personal and financial data are stored on internet-accessible systems administered by Fiserv and are obvious targets for cyber criminals.  A reasonable entity in Fiserv's position should foresee that a failure to use reasonable security measures can lead to serious consequences.  Accordingly, in collecting, storing, and processing SDNY Court FCU's member information on internet-accessible computer systems, Fiserv owed a duty to exercise reasonable care to protect SDNY Court FCU against unreasonable risks of harm arising out of those acts. Fiserv, as the entity with custody of that information, was the only party that realistically could ensure that its systems were sufficient to properly handle and protect the sensitive member information that SDNY Court FCU entrusted to Fiserv.

110.    Fiserv also owed a duty to SDNY Court FCU because Fiserv was certain that SDNY Court FCU would suffer, and SDNY Court FCU did in fact suffer and will continue to suffer, monetary and reputational injury.

111.    Fiserv also owed a duty to SDNY Court FCU because there is a close connection between Fiserv's conduct and SDNY Court FCU's injuries insofar as SDNY Court FCU would not have been injured but for Fiserv's negligence.

28

112.    Fiserv also owed a duty to SDNY Court FCU because there is a strong public policy interest in banking, given that it is an essential service on which consumers must rely, as well as a strong public policy interest in preventing attacks on judicial personnel to promote justice, and preventing Fiserv from behaving in such a reckless, careless, and negligent fashion and from shifting blame to others.

113.    Fiserv further owed a duty to SDNY Court FCU because the burden on Fiserv is minimal and the consequences to the community are positive as a result of imposing a duty on Fiserv under these circumstances.

114.    Fiserv also owes a duty because, upon information and belief, there is insurance available for this risk. Moreover, Fiserv, which reported annual revenues in excess of $10 billion, can afford any damages awarded by the trier of fact.

115.    Through its acts and omissions, Fiserv failed to act with the care that a reasonably prudent person would exercise in the same or similar circumstances.

116.    Fiserv was grossly negligent and reckless, failed to use even a slight degree of care, and acted with complete disregard for SDNY Court FCU's rights.

117.    Without limitation, Fiserv failed to institute appropriate protective measures to maintain the safety and security of the confidential member information to which it was entrusted.

118.    Fiserv also acted negligently because it had a duty to warn SDNY Court FCU of foreseeable dangers under the circumstances, but failed to reasonably and appropriately inform or warn SDNY Court FCU of at least the following:

    a.    that Fiserv had failed to enact appropriate measures to protect the safety and of SDNY Court FCU's member information;

b.    that in the absence of such measures, Fiserv would permit unauthorized individuals to access, delete, or modify SDNY Court FCU's member information;

c.    that SDNY Court FCU should independently take any protective measures to ensure that the safety, security, and accuracy of its member information would be maintained; and

d.    that SDNY Court FCU's member information had been, or was reasonably believed to have been, compromised.

119.    As a direct and proximate result of Fiserv's negligence, SDNY Court FCU and its members have suffered and will continue to suffer damages and harm.

## SIXTH CLAIM FOR RELIEF
### Fraud / Fraudulent Inducement

120.    Plaintiffs repeat the allegations in the preceding paragraphs.

121.    Fiserv, Inc. utilizes a publicly available "Privacy Notice," which contains representations of existing fact regarding the security controls Fiserv claims are in place to protect its customer data.    The Privacy Notice applies to Fiserv, Inc. and all of its subsidiaries and affiliates, including Fiserv Solutions.    A copy of the current Privacy Notice is available at https://www.fiserv.com/en/about-fiserv/privacy-notice.html.

122.    Section 6 of the Privacy Notice makes a representation of fact that Fiserv has "in place appropriate security measures to prevent…personal data from being lost, used or accessed in an unauthorized way, altered or disclosed."

123.    Fiserv lied about the existence and nature of its security measures.  Contrary to Fiserv's representation, Fiserv did not have appropriate security measures in place to prevent SDNY Court FCU's personal data from being lost, used, or accessed in an unauthorized way, altered or disclosed.

124.     Further, independent of any specific misrepresentations made by Fiserv, SDNY Court FCU, its members, and The Finest FCU reasonably and justifiably relied on Fiserv to provide a service with at least minimally adequate measures to protect the confidentiality of SDNY Court FCU's member information and plaintiffs were entitled to presume, and did expect, that Fiserv would take appropriate measures to keep SDNY Court FCU's member information safe.   Fiserv did not disclose at any time to plaintiffs that SDNY Court FCU's member information was vulnerable to hackers because Fiserv's security was inadequate, and Fiserv was the only one in possession of that material information, which it had a duty to disclose.  Fiserv misrepresented, both by affirmative conduct and by omission, the security of its systems, and their ability to authenticate authorized users and to safely store and process SDNY Court FCU's member information.  Fiserv also engaged in deception by failing to implement reasonable and appropriate security measures or to follow industry standards and credit union regulatory guidelines for data security, by actively concealing information about Fiserv's security problems (including by threatening another Fiserv customer who uncovered a Virtual Branch security problem with litigation) and by failing to comply with its own policies and agreements.  Plaintiffs justifiably relied on Fiserv, which had a duty to disclose material facts that would undermine plaintiffs' reasonable reliance on these subjects.  Fiserv has special knowledge of information regarding these subjects that is not reasonably ascertainable by plaintiffs.

125.     SDNY Court FCU and its members reasonably and justifiably relied on Fiserv's misrepresentations, concealments, acts, and omissions to their detriment by, among other things, entering into the Master Agreement and other transactions with Fiserv, and furnishing confidential member information to Fiserv.

126.    Fiserv knew that The Finest FCU is undergoing a merger with SDNY Court FCU. The Finest FCU knew that SDNY Court FCU was a Fiserv Solutions customer and reasonably and justifiably relied on Fiserv's misrepresentations, concealments, acts, and omissions that proper security controls existed to protect SDNY Court FCU's member information in deciding whether to pursue a merger with SDNY Court FCU and how to address the merger.  Mergers between financial institutions are common and a foreseeable occurrence to a company such as Fiserv that claims to specialize in serving financial institutions. Fiserv knew or should have known that the statements in its Privacy Notice and other material misrepresentations, concealments, acts, and omissions would be reasonably and justifiably relied on by those evaluating a potential merger with one of its customers to assess the suitability of a merger candidate and the costs expected to consummate a merger.

127.    Fiserv knew or should have known that its misrepresentations, concealments, acts, and omissions were false or recklessly made without regard to their falsity, they were material to SDNY Court FCU, its members, and The Finest FCU, and made with the intent of misleading them into relying upon them, and they did so justifiably rely.  Further, the falsity of Fiserv's misrepresentations, concealments, acts, and omissions were within Fiserv's peculiar knowledge and could not have been reasonably discovered by plaintiffs.

128.    By Fiserv's misrepresentations, concealments, acts, and omissions, Fiserv defrauded SDNY Court FCU, its members, and The Finest FCU, including fraudulently inducing SDNY Court FCU to contract with Fiserv Solutions.

129.    As a direct and proximate result of Fiserv's fraud, SDNY Court FCU, its members, and The Finest FCU have suffered and will continue to suffer damages and harm.

## SEVENTH CLAIM FOR RELIEF
### Bailment
### (By SDNY Court FCU Only)

130.    Plaintiffs repeat the allegations in the preceding paragraphs.

131.    SDNY Court FCU and its members have a property interest in their member information. These records and information are stored in a tangible format in information technology systems or other media administered by Fiserv. Fiserv acknowledged that SDNY Court FCU's records and information "shall remain the property of [SDNY Court FCU]" (Master Agreement § 3(b)).

132.    SDNY Court FCU's property interest in the foregoing assets arises from its ownership of such property.  Alternatively, to the extent such property is owned by SDNY Court FCU's members, those members have authorized SDNY Court FCU to possess such property.

133.    In a bailment intended to mutually benefit SDNY Court FCU, its members, and Fiserv, Fiserv has accepted delivery of SDNY Court FCU's account records and information and became a bailee of such property, thereby undertaking duties, independent of any contractual duty, to account for such property and to care for it.

134.    As part of this bailment, it was understood that Fiserv would use such property for the limited purposes authorized by SDNY Court FCU, safeguard the property, and return it.

135.    SDNY Court FCU has demanded that Fiserv return such property.

136.    Fiserv breached its duty as a bailee by refusing to return SDNY Court FCU's account records and information, compromising their integrity, misusing them, interfering with them, and otherwise dealing with them in a manner inconsistent with Fiserv's bailee duties and the superior possessory rights of SDNY Court FCU.

137.    Fiserv's violation of its bailee duties was done without SDNY Court FCU's consent and without lawful justification.

138.    As a direct and proximate result of Fiserv's breach of its bailee duties, SDNY Court FCU and its members have suffered and will continue to suffer damages and harm.

**EIGHTH CLAIM FOR RELIEF**
**Conversion**
**(By SDNY Court FCU Only)**

139.    Plaintiffs repeat the allegations in the preceding paragraphs.

140.    SDNY Court FCU and its members have a property interest in their member information. These records and information are stored in a tangible format in information technology systems or other media administered by Fiserv.  Fiserv acknowledged that SDNY Court FCU's records and information "shall remain the property of [SDNY Court FCU]" (Master Agreement § 3(b)).

141.    SDNY Court FCU's property interest in the foregoing assets arises from its ownership of such property. Alternatively, to the extent such property is owned by SDNY Court FCU's members, those members have authorized SDNY Court FCU to possess such property.

142.    SDNY Court FCU has superior possessory rights in these assets than Fiserv.

143.    SDNY Court FCU has demanded that Fiserv return such property.

144.    Fiserv converted SDNY Court FCU's assets by refusing to return its account records and information, compromising their integrity, misusing them, interfering with them, and otherwise dealing with them in a manner inconsistent with the superior possessory rights of SDNY Court FCU.

145.    Fiserv's conversion of SDNY Court FCU's assets was done without SDNY Court FCU's consent and without lawful justification.

146.    As a direct and proximate result of Fiserv's conversion of SDNY Court FCU's assets, SDNY Court FCU and its members have suffered and will continue to suffer damages and harm.

## NINTH CLAIM FOR RELIEF
### Tortious Interference with Prospective Economic Advantage
### (By The Finest FCU Only)

147.    Plaintiffs repeat the allegations in the preceding paragraphs.

148.    The Finest FCU has business relationships and opportunities with its anticipated merger partner SDNY Court FCU, and its members and prospective members.

149.    Fiserv has interfered with those business relationships and opportunities.  In doing so, Fiserv acted with the sole purpose of harming The Finest FCU or by using dishonest, unfair, or improper means.

150.    As a direct and proximate result of Fiserv's tortious interference with The Finest FCU's prospective economic advantage, The Finest FCU has suffered and will continue to suffer damages and harm.

## TENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (By SDNY Court FCU Only)

151.    Plaintiffs repeat the allegations in the preceding paragraphs.

152.    As a result of Fiserv's unjust and unconscionable misconduct, Fiserv has induced SDNY Court FCU to furnish SDNY Court FCU's account records and information and to make payments not justly due to Fiserv.

153.    As a result of this misconduct, Fiserv has been, and will continue to be, unjustly enriched at SDNY Court FCU's expense, and under circumstances that would make it unjust and inequitable for Fiserv to retain its unjustly earned economic benefits.

154.    Accordingly, equity and good conscience require that Fiserv make restitution to SDNY Court FCU, including disgorging the unjust profits and ill-gotten gains Fiserv made in connection with the improper use of and failure to safeguard SDNY Court FCU's account records and member information.

### ELEVENTH CLAIM FOR RELIEF
**Declaratory Relief**
**(By SDNY Court FCU Against Fiserv Solutions Only)**

155.    Plaintiffs repeat the allegations in the preceding paragraphs.

156.    Genuine disputes exist between the parties concerning the Master Agreement and its existence, meaning, enforceability, and applicability, and that affect the highly sensitive personal and financial information of SDNY Court FCU's members.  This Court's declarations of the parties' rights would resolve the legal relations of the parties to justiciable controversies.

157.    **Unenforceability of Master Agreement's Exculpatory and Limitation-of-Liability Provisions (Public Policy).**  SDNY Court FCU is entitled to a declaration that the exculpatory and limitation-of-liability provisions in the Master Agreement are unenforceable because they purport to allow Fiserv to exempt itself from liability for damages caused by its grossly negligent, intentional, fraudulent, tortious, or other conduct for which an exculpatory provision or a limitation-of-liability provision is against public policy.

158.    **Fiserv Solutions' Defective Purported Automatic Renewal of the Master Agreement (N.Y. General Obligations Law § 5-903).**  SDNY Court FCU is entitled to declaration that pursuant to N.Y. General Obligations Law § 5-903, the Master Agreement is unenforceable by Fiserv Solutions because it failed to give the statutorily required notice to SDNY Court FCU before purporting to effectuate an automatic renewal of the Master Agreement.

159.     **No Obligation to Pay Early Termination Fees, Liquidated Damages, Deconversion, or Post-Termination Fees (Contract Defenses and Public Policy).** SDNY Court FCU is entitled to declarations that it has no obligation to pay Fiserv Solutions early termination fees, liquidated damages, "deconversion," or other post-termination fees because of the following:

a.   Fiserv Solutions has no right to enforce the Master Agreement due to its uncured material breaches, fraudulent inducement, fraudulent performance, failure of consideration, commercial impracticability, frustration of purpose, and violation of N.Y. General Obligations Law § 5-903.

b.   The fees at issue, other than liquidated damages, are not quantified in the Master Agreement and therefore unenforceable under the doctrine of indefiniteness and because they are not reasonable.

c.   The early termination fees or liquidated damages provisions are unenforceable penalties because they purport to entitle Fiserv Solutions to payment without regard to Fiserv's own wrongful conduct, and without regard to the substantial independent reasons why SDNY Court FCU may seek to terminate the Master Agreement to ensure its members are properly protected. The only legitimate purpose of such provisions would be to compensate for actual harm that is difficult to quantify.  But if such provisions coerce action or punish—as they do here—they are unenforceable penalties.  The plain purpose of these provisions is to coerce SDNY Court FCU into maintaining its relationship with Fiserv Solutions or pressure SDNY Court FCU to merge with a credit union that is a Fiserv customer instead of The Finest FCU (in which event Fiserv agreed to, and upon information and belief, has a business practice of reducing these fees).   Such provisions are

incredibly punitive because Fiserv has demanded that SDNY Court FCU pay these fees even though Fiserv has engaged in misconduct.  Moreover, even if these provisions are not unenforceable penalties, to the extent Fiserv relies on them to seek indemnification for or recover amounts incurred as a result of its own wrongful acts, such provisions are unenforceable under New York law.

**TWELFTH CLAIM FOR RELIEF**
**Rescission of Master Agreement**
**(By SDNY Court FCU Against Fiserv Solutions Only)**

160.    Plaintiffs repeat the allegations in the preceding paragraphs.

161.    SDNY Court FCU may have the Master Agreement rescinded because Fiserv misrepresented to SDNY Court FCU the existence and nature of Fiserv's security controls. These representations were material to SDNY Court FCU, and SDNY Court FCU reasonably relied on them in deciding whether to enter into and continue performing under the Master Agreement, which did not disclaim reliance on these types of specific representations, and the falsity of Fiserv's representations was within Fiserv's peculiar knowledge and could not have been reasonably discovered by SDNY Court FCU.

162.    SDNY Court FCU may have the Master Agreement rescinded due to commercial impracticability and frustration of purpose because unforeseeable events not caused by SDNY Court FCU, have altered the essential nature of the Master Agreement, and SDNY Court FCU has been unable to obtain its expected bargain from Fiserv.

163.    SDNY Court FCU may also have the Master Agreement rescinded due to Fiserv's breaches. The breaches are so material, willful, substantial, and fundamental that they have defeated the object of the parties in making the Agreement. These breaches have left SDNY Court

38

FCU in a position substantially different from what the parties intended at the time they entered into the Agreement.

164.    SDNY Court FCU has no adequate remedy at law. Accordingly, this Court should rescind the Agreement.

## THIRTEENTH CLAIM FOR RELIEF
### Injunction

165.    Plaintiffs repeat the allegations in the preceding paragraphs.

166.    Fiserv has violated SDNY Court FCU's rights to the detriment of SDNY Court FCU and its members, and future violations of SDNY Court FCU's rights and harm to its members are threatened and imminent.

167.    SDNY Court FCU has no adequate remedy at law, an injunction is necessary to prevent SDNY Court FCU and its members from suffering irreparable injury, and the equities favor such relief.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury of all issues so triable.

## DEMAND FOR RELIEF

WHEREFORE, plaintiffs SDNY Court FCU, on behalf of itself and its members, and The Finest FCU request that the Court grant the following relief:

(i)     enter judgment for all damages allowed by law—including, without limitation, compensatory, consequential, incidental, reliance, restitutionary, statutory, and punitive—in amounts to be determined at trial;

(ii)    award plaintiffs their attorneys' fees and costs, and the maximum prejudgment and postjudgment interest allowed by law;

(iii)   declare the parties' rights and the rights of SDNY Court FCU's members;

(iv)     rescind the Master Agreement;

(v)      issue an injunction to prevent SDNY Court FCU and its members from suffering

         or continuing to suffer harm; and

(vi)     award any further relief that may be necessary to achieve justice.


Dated: October 31, 2022                    Respectfully submitted,

                                           BARCLAY DAMON LLP

                                           By: */s/ Charles J. Nerko*
                                               Charles J. Nerko
                                               Kevin D. Szczepanski
                                               Benjamin Wilkinson
                                               Sarah A. O'Brien
                                           1270 Avenue of the Americas, Suite 501
                                           New York, NY 10020
                                           212.784.5800
                                           cnerko@barclaydamon.com
                                           kszczepanski@barclaydamon.com
                                           bwilkinson@barclaydamon.com
                                           sobrien@barclaydamon.com

                                           *Attorneys for Plaintiffs*
                                           *US Court House SDNY Federal Credit Union,*
                                               *on behalf of itself and its members,*
                                                        *and*
                                           *The Finest Federal Credit Union*

40