

**FOLEY**

FOLEY & LARDNER LLP

ATTORNEYS AT LAW

777 EAST WISCONSIN AVENUE
MILWAUKEE, WI  53202-5306
414.271.2400 TEL
414.297.4900 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
414.297.5518
awronski@foley.com

CLIENT/MATTER NUMBER
012474-0105

October 10, 2022

**<u>Via E-Mail</u>**

Charles J. Nerko
Barclay Damon
1270 Avenue of the Americas
New York, NY  10020

            Re:    US Court House SDNY Federal Credit Union

Dear Mr. Nerko,

        This firm represents Fiserv Solutions, LLC (f/k/a Fiserv Solutions, Inc.) ("Fiserv") and its affiliates, including Fiserv, Inc., with respect to the relationship between Fiserv and US Court House SDNY Federal Credit Union ("SDNY FCU").  We are in receipt of your October 6, 2022 correspondence to Mr. Rosman related to SDNY FCU.  Please direct all future correspondence about this matter to me and my partner, Andrew J. Wronski.[1]

        As an initial matter, your letter threatens that SDNY FCU will pursue a temporary restraining order and preliminary injunction, without further notice, should Fiserv not comply with certain demands associated with: (i) the return and storage of member information; (ii) the provision of audits or evaluations associated with Fiserv's data-security measures; and (iii) reimbursement for attorneys' fees (ostensibly incurred in drafting your letter).  SDNY FCU has notice that Fiserv has engaged Foley & Lardner LLP to represent it in this matter and lacks "good and sufficient reasons" for seeking any such relief on an *ex parte* basis.  *See* Fed. R. Civ. P. 65; U.S. Dist. Ct., S.D.N.Y, Local Rule 6.1(d). As a result, SDNY FCU cannot make "a clear and specific showing . . . why a procedure other than by notice of [SDNY FCU's] motion is necessary."  Fiserv expects that SDNY FCU will provide Fiserv, through its counsel, with prompt actual notice of any motion for injunctive relief, consistent with SDNY FCU's obligations under Local Rule 6.1.

        Putting that procedural issue aside, however, there is no basis or need whatsoever for injunctive or other relief.  As detailed further below, Fiserv has not breached any obligations under the Master Agreement and, other than cursory assertions, your letter details none.  To be specific, Fiserv has never received any notice, inquiry, or communication of any kind from SDNY FCU with respect to any supposed data security issue in connection with any of the services that Fiserv has provided.  Fiserv denies the existence of any such issues, any data security breach or incident or, as a

---

[1] Fiserv acknowledges receipt of SDNY FCU's preservation demand and expressly reserves all rights as to the appropriate and reasonable scope of its preservation obligations.

AUSTIN          DETROIT          MEXICO CITY      SACRAMENTO        TALLAHASSEE
BOSTON          HOUSTON          MIAMI            SALT LAKE CITY    TAMPA
CHICAGO         JACKSONVILLE     MILWAUKEE        SAN DIEGO         WASHINGTON, D.C.
DALLAS          LOS ANGELES      NEW YORK         SAN FRANCISCO     BRUSSELS
DENVER          MADISON          ORLANDO          SILICON VALLEY    TOKYO



**FOLEY & LARDNER LLP**

Charles J. Nerko
October 10, 2022
Page 2

result, any "affected" members of SDNY FCU.  Your letter, which was received October 6, 2022, and demanded a response within two business days, October 10, 2022, an unreasonably and unnecessarily short period of time, was the first communication Fiserv has received from SDNY FCU raising any such issues.  If SDNY FCU truly wants an "amicable" resolution, a discussion between business personnel would have be a more appropriate and productive approach than the threats set forth in your letter.  We also remind SDNY FCU of the mandatory dispute resolution procedures in Section 9 of the Master Agreement.[2]

Fiserv understands that, in light of a merger with Finest FCU, SDNY FCU intends to terminate the Master Agreement and transition to a new account processing vendor. To that end, Fiserv provided an estimate of deconversion and early termination fees that would be incurred if Fiserv performed deconversion services.  SDNY FCU has not yet proceeded with deconversion, and Fiserv remains SDNY FCU's accounting processing vendor.  For that reason, SDNY FCU's assertion that Fiserv is somehow "withholding" client information is confounding; Fiserv is simply continuing to provide account processing services to SDNY FCU.

We interpret your letter as an indication that SDNY FCU wants to perform its own deconversion, rather than have Fiserv provide that service.  That, of course, is SDNY FCU's decision.  That process, however, needs to be coordinated with Fiserv to avoid an interruption of account processing services.  We suggest that process is best coordinated between business personnel and not lawyers.  Fiserv is prepared to stop providing services on whatever date that SDNY FCU instructs and to discuss the process and format for transferring SDNY FCU's member information and related data, but requires clear direction from SDNY FCU, particularly with respect to the specific date on which SDNY FCU wants Fiserv to cease account processing services.

SDNY FCU will remain obligated to pay for the account processing services and any deconversion services that it uses in the course of that process.  As provided in Sections 8 and 10 of the ASP Services Exhibit of the Master Agreement, fees for any deconversion services that SDNY FCU chooses to use and account processing through the date of deconversion must be paid in advance.  In the interests of cooperation and facilitating SDNY FCU's desired deconversion, however, Fiserv will <u>not</u> require that early termination fees be paid in advance, but expects that they will be paid in the ordinary course after invoicing.  For those reasons, there is no basis for your assertion in the letter that Fiserv is somehow withholding SDNY FCU's client information in violation of Section 3 of the Master Agreement or otherwise.

In short, Fiserv is prepared to work cooperatively with SDNY FCU to accomplish deconversion on a reasonable timeframe, but requires specific direction from SDNY FCU.  We trust

---

[2] The Letter referred to the Master Agreement between Fiserv Solutions, Inc. and SDNY FCU, dated April 26, 2012, and all amendments, schedules, exhibits and appendices thereto (the "Master Agreement").



**FOLEY & LARDNER LLP**

Charles J. Nerko
October 10, 2022
Page 3

these assurances resolve the concerns expressed in your letter and make clear that preliminary injunctive relief would be both unnecessary and inappropriate.

The balance of your letter, however, also requires mention, because it makes numerous inaccurate statements and assertions.  Initially, there is no factual or legal basis for SDNY FCU's assertion that Virtual Branch fails to comply with Section 4(a) of the Master Agreement.  As noted above, SDNY FCU has never notified Fiserv of any issue or incident, and your letter identifies none.  If SDNY FCU has additional information to support this assertion, please provide it.  To be clear, Fiserv is not aware of any, much less any imminent, issues with SDNY FCU's continued use of Virtual Branch services.

For these same reasons, SDNY FCU's assertions that Fiserv breached its obligations related to the Master Agreement have no basis.  SDNY FCU accuses Fiserv of: (i) failing to comply with its regulatory, warranty, and privacy obligations under Section 6 of the Master Agreement; (ii) failing to implement appropriate security measures under Section 6 of the Master Agreement; and (iii) failing to provide adequate security for SDNY FCU's member information under the implied covenant of good faith and fair dealing.  Again, SDNY FCU, has never provided any notice of or expressed concern about, and Fiserv is not aware of, any security issues or breaches related to the products and services that SDNY FCU received under the Master Agreement.  Your letter does not describe any particular injury or incident that gives rise to its alleged concerns that Fiserv can assess or evaluate further.

Finally, Fiserv believes that the Master Agreement's automatic renewal provision is valid and that the Master Agreement renewed in August 2022.  New York's automatic-renewal statute, N.Y. Gen. Obl. Law § 5-903, only restricts automatic renewal of contracts involving "service or repair *to or for any real or personal property*." *Id.* § 5-093(2) (emphasis added).  Section 5-903 does not extend to administrative services and commercial contracts like the Master Agreement. *See, e.g.*, *Trustpilot Damages LLC v. Trustpilot Inc.*, No. 21-2837-CV, 2022 WL 2124865, at *3 (2d Cir. June 13, 2022) (holding that Section 5-903 did not apply to consumer review data service contract); *Donald Rubin, Inc. v. Schwartz*, 160 A.D.2d 53, 57 (1st Dep't 1990) (holding that Section 5-903 did not apply to a consulting services contract); *Trepp, LLC v. McCord Dev., Inc.*, 100 A.D.3d 510 (1st Dep't 2012) (holding that Section 5-903 did not apply to an online financial analytics contract).  Fiserv, therefore, reserves fully its right to payment of early termination fees under the Master Agreement.  As noted above, however, Fiserv will not require the payment of early termination fees before SDNY FCU's deconversion.  As a result, the issue presents a simple contract claim for money damages for which injunctive relief is uniquely inappropriate.

We are available to discuss these issues and SDNY FCU's desired deconversion timeline further, although we suggest that the prompt involvement of business representatives from both parties would be the most productive and effective course of action.  Please let us know how you would like to proceed.



**FOLEY & LARDNER LLP**

Charles J. Nerko
October 10, 2022
Page 4

      Fiserv hereby expressly reserves all rights and remedies afforded to it under the Master Agreement.

      Very truly yours,

*Anne B. Sekel*

      Anne B. Sekel


cc:    Andrew J. Wronski (*by e-mail only*)
       David E. Frank (*by e-mail only*), Fiserv Vice President, Associate General Counsel