**BARCLAY DAMON**LLP

**Charles J. Nerko**
*Partner*

October 12, 2022

<u>Via Email</u>
Anne B. Sekel, Esq.
Foley & Lardner LLP
90 Park Avenue
New York, New York 10016

      Re:    <u>US Court House SDNY Federal Credit Union</u>

Dear Anne:

We understand from your letter that Fiserv is declining to comply with SDNY Court FCU's demands. Even as a terminated vendor, Fiserv refuses to immediately return, remove from the internet, and dispossess itself of our client's highly sensitive records. These records contain extraordinarily sensitive personal information pertaining to federal judges, U.S. attorneys, U.S. marshals, other federal law enforcement agents, and Court personnel. This information—like judges' home addresses, answers to security questions, and the locations where their debit cards are used—is highly prized by those seeking to stalk, harass, intimidate, and harm judicial personnel.

Your letter asserts that "Fiserv is not aware of[] any security issues or breaches related to the products and services that SDNY FCU received under the Master Agreement." But the Master Agreement and federal regulations governing credit union vendors require that Fiserv itself provide audit records establishing the propriety of its security. In any event, Fiserv is assuredly aware of the problems with Virtual Branch based on past litigation involving Virtual Branch security failures. And Fiserv's own annual report admits a potential security risk:

> ***We expect that unauthorized parties will continue to attempt to gain access to our systems****…. Although we believe that we maintain a robust program of information security and controls and that none of the events that we have encountered to date have materially impacted us, **we cannot be certain that the security measures and procedures we have in place to** detect security incidents and **protect sensitive data**, including protection against unauthorized access and use by our employees, **will be successful or sufficient** to counter all current and emerging technological risks and threats.*

*See* Fiserv, Inc. SEC Form 10-K dated Feb. 23, 2022 (emphasis added).

We therefore insist that Fiserv comply with SDNY Court FCU's demands from our prior correspondence without further delay. If immediate compliance is not possible, SDNY Court FCU

October 12, 2022
Page 2

is favorably inclined to accept a consent injunction with satisfactory assurances pertaining to data security and the return of our client's records forthwith, so we can obviate emergency motion practice while litigation proceeds on SDNY Court FCU's damages claims.

There is no need for our client representatives to discuss a "desired deconversion timeline." Given the seriousness of the security risks, the time for Fiserv to act is now. Our client is ready to make alternative arrangements for its account processing pursuant to its disaster recovery plan as soon as Fiserv returns our client's records.

To be clear, Fiserv has been terminated by SDNY Court FCU. Fiserv should not act under the misperception noted in your letter that "Fiserv remains SDNY FCU's account processing vendor [and is…] continuing to provide account processing services."[1] Fiserv is no longer authorized to serve SDNY Court FCU or possess its records. The credit union objects to Fiserv acting otherwise.

We hope Fiserv reconsiders its position and does the right thing. Should Fiserv continue to retain SDNY Court FCU's records, expose them to hacking risks, or fail to provide required audit documents, our client will seek appropriate emergency injunctive relief to prevent irreparable harm to the credit union's members. We will make this application to the Court on notice to you, and likewise request the professional courtesy of advance notice if and when Fiserv will return our client's records and cease providing account processing, to assure our client has an orderly transition to its disaster recovery arrangements.

Please let us know by the close of business tomorrow if Fiserv will comply with our client's demands. Otherwise, we will thereafter apprise you of the date, time, and location of our client's TRO application.[2] Our client and other affected parties continue to reserve all rights in this matter.

Very truly yours,

*/s/ Charles J. Nerko*

Charles J. Nerko

---

[1] As to the purported reservation of rights in the footnote of your letter regarding data preservation, Fiserv has not identified any aspect of data preservation that would be unduly burdensome. If Fiserv fails to appropriately preserve materials, it does so at its own risk.

[2] The Master Agreement's requirement to participate in a pre-litigation meeting does not apply given that our client will seek emergency injunctive relief. Through this letter and our prior correspondence, our client has endeavored to work with Fiserv Solutions in good faith to resolve the dispute.